IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MAURICE D. KING #19392-037 | * |
| Petitioner | * |
| v. | *   CIVIL ACTION NO. GLR-12-836 |
| J.F. CARAWAY, *Warden* | * |
| Respondent | * |
| | *** |

**MEMORANDUM**

Anthony D. King ("King") is a U.S. Bureau of Prisons ("BOP") inmate currently confined at the Federal Correctional Institution at Cumberland, Maryland ("FCI-Cumberland"). On March 16, 2012, he filed this 28 U.S.C. § 2241 Petition for Habeas Corpus relief, seeking to expunge an adjustment or to have a rule violation reduced. ECF No. 1. King claims that the evidence entered at an October 1, 2010 adjustment proceeding does not support a guilty finding for possession of a "hazardous tool" (a cell phone) because he was not found using the cell phone while committing or attempting to commit any of the conduct listed in Offense Code 108. King claims that he should have been charged with a Code 305 violation which prohibits the possession of anything not authorized for retention or receipt by an inmate. Id. King also claims that he was denied equal protection, and that the BOP guidelines regarding contraband are void for vagueness. Id.

The issues have been fully briefed, and the Court finds oral hearing unnecessary. See Local Rule 105.6 (D. Md. 2011). For the reasons stated herein, the Petition shall be denied and dismissed.

The BOP has the authority to provide for the protection, instruction, and discipline of all persons convicted of offenses against the United States. See 18 U.S.C. § 4042(a)(3). The rules concerning inmate discipline, found in 28 C.F.R. §§ 541.1 et seq,, provide for an exhaustive review

process. If staff believe that an inmate has violated a BOP regulation, an incident report is prepared and the inmate is provided a written copy of the charges. Ordinarily this occurs within 24 hours of the staff's becoming aware of the incident. See 28 C.F.R. § 541.5(a).

An investigating officer will then advise the inmate of the charges against him, request a statement from the inmate, and advise him of his rights. After the investigation is completed, the matter may be informally resolved and the matter closed, or materials are forwarded to the Unit Disciplinary Committee ("UDC") for an initial review, which is ordinarily conducted within five working days. See 28 C.F.R. § 541.5(b) & 541.7. The inmate is entitled to be present at the hearing except during the deliberations of the decision makers or when institutional security would be jeopardized by the inmate's presence. The inmate may also make a statement and present documentary evidence on his own behalf. See 28 C.F.R. §§ 541.7(d) & (e).

After considering all of the evidence presented at the hearing, the UDC makes a decision based on the facts and, if there is conflicting evidence, based on the greater weight of the evidence. See 28 C.F.R. § 541.7(e). If the UDC finds that the inmate committed the prohibited act or a similar act, if reflected in the incident report, and determines that the violation is serious and warrants consideration for non-minor sanctions, the UDC refers the charges, without indication of findings as to the commission of the alleged violation, to the Disciplinary Hearing Officer ("DHO") for further proceedings. See 28 C.F.R. §§ 541.7(a) & (g). The UDC advises the inmate of his rights to be afforded at the hearing before the DHO and asks the inmate to indicate a choice of staff representative, if any, and the names of witnesses he wishes to be called to testify at the hearing and the nature of the testimony they are expected to provide. See 28 C.F.R. §§ 541.7(g) & 541.8.

When appearing before the DHO, the inmate is entitled to: (1) make a statement and to present documentary evidence; (2) submit the names of requested witnesses and have them called to

testify; and (3) present documents on his behalf.  See 28 C.F.R. §§ 541.8(d), (e) & (f).  Witness testimony and documentary evidence may be presented provided the calling of witnesses and disclosure of documents does not jeopardize prison or inmate security.  Id.

The DHO makes a determination as to whether or not the inmate committed the charged act(s) or similar act(s) if reflected in the incident report and prepares a record of the proceedings which need not be verbatim.  See 28 C.F.R. §§ 548(h).  The record documents the advisement of the inmate's rights, the findings and decision of the DHO, and the specific evidence relied on by the DHO, and includes a brief statement of the reasons for the sanctions.  Id.  A written copy of the DHO's decision and disposition must be provided to the inmate.  Id.

It is relevant to this case that the BOP prohibits inmates from possessing "hazardous tools." Regulations in place at the time of the incident defined hazardous tools as: "Tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others: or those hazardous to institutional security or personal safety: e.g., hack-saw blade."  See 28 C.F.R. § 541.13, Table 3.1  Possession of a hazardous tool is referred to as a "Code 108" infraction. Id.  Code 100-level offenses are the greatest severity level of offense.  Federal regulations required the DHO impose on an inmate convicted of a Code 100-level infraction one or more of the following sanctions: (a) recommendation of parole date rescission; (b) forfeiture of earned statutory good time or non-vested good conduct time (up to 100%); (c) recommendation of disciplinary transfer; (d) disciplinary segregation up to 60 days; and /or (e) monetary restitution.  Id.

In reliance on King's base file and the declaration of Marvella Heard, Respondent contends that King's due process and equal protection rights were not violated during his adjustment review process.  She provides the following information:

From November 23, 2010 to July 8, 2011, King was designated to FCI Fort Dix. ECF No. 3, Ex. 1. On April 14, 2011, King received Incident Report Number 2150743 for having been found talking on a cell phone in his cell on that date. Id., Ex. 1, Att. C. He was charged with a Code 108 violation for possession of the cell phone. Id. The report indicated King was found lying in his bunk talking to himself with no other inmates around. King was ordered to get up and submit to a pat search. King was observed holding a black cell phone in his hand which was plugged into the headset he was wearing. Id. The report was delivered to King within the hour of its being prepared and, pursuant to regulations, he was read his rights. King stated that "the report is true." Id. The matter was automatically referred to the DHO. Id.

On April 19, 2011, King was made aware of his rights and that the DHO would hold a hearing. Id. King did not request staff representation or to have any witnesses testify on his behalf. Id.

After taking in the evidence and conducting a hearing, the DHO held there was sufficient evidence to support the finding that King had committed the Code 108 offense as charged. Specifically, the DHO observed that during the hearing King stated, "I had the cell phone. I do not understand how it's a hazardous tool." In addition to the incident report and investigation the DHO considered the picture of the cell phone seized and chain of custody form. Id.

Although prisoners do retain rights under the Due Process Clause, prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (citing Morrissey v. Brewer, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where an inmate faces the

---

[1] Prohibited acts and sanctions are now stated in 28 C.F.R. § 541.3.

possible loss of good conduct time ("GCT"), he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. See Wolff, 418 U.S. at 564-571. There is no constitutional right to confront and cross-examine witnesses or to retain and be appointed counsel during prison disciplinary proceedings. See Baxter v. Palmigiano, 425 U.S. 308, 322-23 (1976); Brown v. Braxton, 373 F.3d 501, 505-06 (4th Cir. 2004). As long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. See Baxter, 425 U.S. at 323 n.5.

The Court finds that the disciplinary process associated with King's institutional charge meets the aforementioned minimum due process procedural requirements. He received advanced written notice of the charges, was advised of his rights, and received formal notice of the DHO hearing.

Further, the DHO submitted a written statement as to the evidence relied on to determine that King violated Code 108, and offered specific reasons why the sanctions were imposed. King was given the opportunity to call and to have a staff representative present but waived such rights. His testimony did not exonerate him from the Code 108 charge, rather he implicated himself before the

DHO indicating he was in possession of the cell phone but disputed that the cell phone should be classified a hazardous tool.[2]

The Court further finds no evidence of bias or prejudice on the part of the DHO when conducting the hearing and reaching its conclusions. Prisoners' claims of bias and retaliation are taken with skepticism. Cochran v. Morris, 73 F.3d 1310, 1317-18 (4th Cir. 1996). King makes no specific allegations that the DHO was biased against him, nor does the record suggest that the proceedings against him were tainted. To the contrary, King admitted to the DHO that he possessed the cell phone. Such an admission was sufficient, without more, to find him guilty of the rule violation.

Moreover, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." Superintendent, Mass. Correctional Institute v. Hill, 472 U.S. 445, 455 (1985). Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. See Kelly v. Cooper, 502 F.Supp. 1371, 1376 (E.D. Va. 1980). The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. See Hill, 472 U.S. at 456; see also Baker v. Lyles, 904 F.2d 925, 933 (4th Cir. 1990). As long as there is some evidence in the record to support a disciplinary committee's factual findings, a federal court will not review their accuracy.[3]

---

[2] Petitioner's claim that his possession of the cell phone could have been charged under a variety of Code sections is of no constitutional moment. The DHO has the discretion, based upon the evidence, to find that the inmate "committed the prohibited act charged and/or similar prohibited act(s) as described in the incident report." See 28 C.F.R. 5418(a)(1).

[3] The role of the district court is not to afford a de novo review of the disciplinary board's factual findings. The district court should simply determine whether the decision was supported by some facts. The sole and only issue of constitutional substance is whether there exists any evidence at all, that is, whether there is any basis in fact to support the action taken by the prison officials. Otherwise, the federal court would assume the task of retrying all prison disciplinary disputes.

The proceedings before this Court are not a retrial of the incidents and the undersigned finds that the DHO decision was based upon "some evidence." The DHO report indicates that in finding some evidence to sustain the Code 108 charge, he relied on: (1) the investigating officer's report; (2) statements made by King at the hearing; and (3) the picture of and chain of custody for the cell phone. These facts are sufficient upon which to base a prison disciplinary conviction. They constitute "some" facts upon which the DHO was entitled to rely in finding King guilty of possession of a hazardous tool.

Next, King claims he was denied equal protection. "The Equal Protection Clause generally requires the government to treat similarly situated people alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). To show that his equal protection rights were violated King must demonstrate that he was treated differently than similarly situated inmates, the discrimination was intentional or purposeful, and the disparity cannot be justified by any valid prison or security interest. See Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Viewing the facts and papers in a light most favorable to King, he presents no genuine dispute whether the denial of his privileges violated equal protection. See Dennis v. Columbia Colleton Medical Center, Inc., 290 F.3d 639, 645 (4th Cir. 2002).

King has presented no evidence that he is a member of any suspect class or that he was treated differently as a result of his membership in such class. ECF No. 1. Moreover, King's Complaint is devoid of facts which might show "intentional or purposeful discrimination" due to a suspect trait. King's claim that, in some instances in other federal cases, he believes inmates were charged with lesser offense codes for possession of cell phones, is simply insufficient to support his claim of an equal protection violation. King offers nothing in support of his claim

other than self-serving conclusory statements.  As noted, the evidence shows that King was charged and found guilty of the inmate rule violation because investigation revealed him in possession of a cell phone—and he admitted possession of same.

To the extent King claims the sanctions imposed against him should be lifted because it was unconstitutionally vague that possession of a cell phone would constitute a Code 108 offense, his claim likewise fails.  ECF No. 1.  In support of his claim, King points to the fact that possession of a cell phone could be charged in several different ways under the Code.

A statute is impermissibly vague if it either (1) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits;" or (2) "authorizes or even encourages arbitrary and discriminatory enforcement." United States v. Whorley, 550 F.3d 326, 333 (4th Cir. 2008).  To satisfy constitutional muster, statutory prohibitions must simply "set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with." Id.  A statute need not spell out every possible factual scenario with "celestial precision" to avoid being struck down on vagueness grounds. Id.

It is not constitutionally necessary for the BOP to include every kind of implement that might fall into the category of "hazardous tool" rather, it is sufficient that a person of ordinary intelligence understand that a cell phone could be used in such a manner.  In the instant case, it is clear that a person of ordinary intelligence would understand a cell phone could be used as a hazardous tool as defined by BOP regulations.  Cell phones could be used to facilitate an escape or coordinate harm to others.  Moreover, numerous courts have rejected the precise argument advanced by King for the reasons stated above. See Patel v. Zenk, 2011 WL 2421092 at *2 (3rd Cir. June 17, 2011) ("We are not persuaded that Code 108 is unconstitutionally vague" in the context of inmate cell phone

possession); Robinson v. Warden, 250 Fed. Appx. 462, 464 (3rd Cir. 2007) (same); Franco v. Adler, 2011 WL 826256 at *5 (E.D. Cal. Mar. 2, 2011); Vasquez v.Shartle, 2011 WL 1004934 at *5 (N.D. Ohio Mar. 18, 2011) (holding that "the categorization of a cell phone as a hazardous tool was fairly applied to conduct that Petitioner knew violated prison rules, and was not unconstitutionally vague"); U.S. v. Beason, 2011 WL 399896 *7, 9 (N.D. W. Va. 2011) (possession of a cell phone in federal prison is punishable under Code 108 and rejecting claim that cell phone is not a hazardous tool when not used for criminal conduct).

For the aforementioned reasons the Court concludes that King's disciplinary hearing process comports with due process and his constitutional rights were not otherwise violated. The DHO's decision shall stand. Habeas relief shall be denied. A separate Order follows.

September 27, 2012                                            /s/

                                                              George L. Russell, III
                                                              United States District Judge